UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOSEPH KOVACH,<br><br>                                  Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                                  Defendant. | Case No.:  18cv1848-GPC (MSB)<br><br>**REPORT AND RECOMMENDATION<br>REGARDING CROSS-MOTIONS FOR<br>SUMMARY JUDGMENT<br>[ECF NOS. 14, 15]** |

This Report and Recommendation is submitted to the Honorable Gonzalo P. Curiel, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.  On August 7, 2018, William Joseph Kovach ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability, disability insurance benefits, and supplemental security income.  (ECF No. 1.)

Now pending before the Court are the parties' cross-motions for summary judgment.  After a thorough review of the parties' submissions, along with the entire record submitted in this matter, and for the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the

Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

On September 5, 2014, Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, alleging disability beginning January 1, 2011 (Certified Admin. R. 290-98, 308-14, ECF No. 11 ("AR")). The Commissioner denied the claims by initial determination, (AR 173-88), and upon reconsideration, (AR 191-210). Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 227-28.) The administrative hearing was held on July 26, 2017. (See AR 59-85.) On August 24, 2017, ALJ Salena D. Bowman-Davis issued a decision finding Plaintiff was not disabled, as defined in the Social Security Act. (AR 43-54.) On July 3, 2018, Plaintiff's request for review was denied by the Appeals Council, (AR 1-6), resulting in the ALJ decision becoming the final decision of the Commissioner, (42 U.S.C. § 405(h)), but subject to judicial review, (42 U.S.C. § 405(g)).

## II. SUMMARY OF THE ALJ'S FINDINGS

The ALJ determined that Plaintiff met the status requirements for disability benefits through June 30, 2021. (AR 45.) Thereafter, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2011, the alleged onset date. (AR 45.) The ALJ found that although the Plaintiff worked after the alleged onset date, his earnings did not meet the minimum threshold for substantial gainful activity. (AR 45-46.)

At step two, the ALJ found that Plaintiff had the following severe impairments: disorder of the back, degenerative joint disease, and obesity. (AR 46.) Additionally, the ALJ classified Plaintiff's following conditions as nonsevere, and not negatively impacting

Plaintiff's ability to work: sleep apnea, chronic heart failure, and mental impairments. (AR 46-47.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the 20 CFR Part 404, Subpart P, Appendix I. (AR 47.)

Before step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(e), and determined that Plaintiff had the RFC to perform the following activities but with certain limitations:

> perform less that the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). The claimant can lift, carry, push, or pull 25 pounds frequently and 50 pounds occasionally. The claimant can stand and or walk for six hours with normal breaks. The claimant can sit for six hours with normal breaks. The claimant can push and pull no more than frequently with the upper extremities. The claimant can no more than frequently use hand controls. The claimant cannot perform any repetitive pushing and pulling. The claimant can perform no more than frequently handling and fingering bilaterally, with no continuous handling or fingering. The claimant can occasionally climb stairs, ramps, ladders, and scaffolds. The claimant can occasionally crouch, crawl and stoop. The claimant must avoid unprotected heights and workplace hazards. The claimant can tolerate no more than occasional exposure to extreme temperatures. The claimant is best suited for an occupation with no high production quotas and not in a fast-paced work environment. The claimant requires the freedom to alternate sitting with standing or walking while performing the occupation.

(AR 48.)

At step four, the ALJ first found that Plaintiff's RFC allowed him to perform his past relevant work as a security guard. (AR 54.) Accordingly, the ALJ found that Plaintiff was not disabled from January 1, 2011, through the date of the decision and concluded her analysis. (AR 54); see also 20 C.F.R. § 404.1520(f).

### III. ISSUE IN DISPUTE

The disputed issue in this case is whether the ALJ properly evaluated the opinion of Plaintiff's treating physician, Paul Simon, M.D ("Dr. Simon"). (See ECF Nos. 14-1 at 4; 15-1 at 6.)

# IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  See Batson v. Comm. of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (reversing for lack of substantial evidence).  "Substantial evidence means "more than a mere scintilla" but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).

# V.  DISCUSSION

A treating physician's opinion is entitled to special weight because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (citing Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991)).  Where the

treating physician's opinion, as in this case,[1] is controverted by another physician, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence in the record.  See <u>Magallanes</u>, 881 F.2d at 751; <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If there is substantial evidence in the record contradicting the opinion of the treating physician, the opinion is no longer given "controlling weight" and the ALJ must consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to give the opinion of the treating physician.  See <u>Orn</u>, 495 F.3d at 632.

**A.    Dr. Simon's Opinion**

Dr. Simon was Plaintiff's primary care provider at the Veterans Administration ("VA") San Diego Healthcare System and began treating Plaintiff on March 24, 2011.  (AR 426, 822.)  On May 16, 2017, Dr. Simon completed a check-the-box "Physical Residual Functional Capacity Questionnaire" ("Questionnaire").  (AR 42-45.)  In it, Dr. Simon reported that Plaintiff had been diagnosed with congestive heart failure with preserved ejection fraction[2] and degenerative joint disease of the lower extremities.  (AR 822.)  Dr. Simon identified 2D echo and x-rays of Plaintiff's knees and ankles[3] as objective evidence of Plaintiff's diastolic dysfunction and degenerative joint disease, respectively.

---

[1] As discussed further in section B.2 and B.3, <u>infra</u>, multiple medical expert opinions in the record conflicted with Dr. Simon's.

[2] An ejection fraction greater than 60% is considered normal while an "ejection fraction is considered reduced for purposes of a mitral valve claim if it is measured as less than or equal to 60%."  <u>In re Diet Drugs (Phentermine/Fenfluramine/Dexenfluramine) Prods. Liab. Litig.</u>, No. 99-20593, 2010 WL 3470385, at *1 (E.D. Pa. Aug. 31, 2010).  An ejection fraction of "60 to 65 percent" is considered a "well-preserved ejection fraction."  <u>Martin v. Berryhill</u>, No. 1:16-CV-79, 2018 WL 6694830, at *1, *5 (M.D. Ga. Mar. 29, 2018).  Here, Dr. Simon reported that Plaintiff had a "preserved ejection fraction," (AR 822), and that Plaintiff had a "2d echo of 69%," (<u>see, e.g.</u>, AR 577, 609, 783).

[3] The Court did not identify any x-rays of Plaintiff's knees or ankles in the Administrative Record, only his hands and wrists.  (<u>See</u> AR 617-21.)

(AR 822.) Dr. Simon opined that Plaintiff was not a malingerer, his prognosis was "poor" and noted symptoms of decreased exercise tolerance, dyspnea[4] on exertion, and pain in Plaintiff's knees and lower back. (AR 822.) Dr. Simon reported in the Questionnaire that Plaintiff experienced the listed symptoms and limitations since January 1, 2012. (AR 825.) Dr. Simon further noted that Plaintiff suffered from fatigue caused by medication, depression, and anxiety. (AR 822-23.) Dr. Simon further opined that in a competitive work situation, Plaintiff was limited as follows: sit for only 30 minutes at one time; stand for only 45 minutes at one time; occasionally lift up to twenty pounds and rarely lift fifty pounds; rarely turn his head in any direction or hold his head in a static position; rarely twist, stoop, crouch/squat, or climb stairs; never climb a ladder; and that he needed a job that would permit him to shift at-will between sitting, standing, or walking, take unscheduled breaks, and elevate his legs after prolonged sitting. (AR 823-24.)

Notably, Dr. Simon opined that Plaintiff could do only the following in an 8-hour working day: (1) sit for less than a total of two hours, (2) stand/walk less than a total of two hours, and (3) for only 20% of the working day, reach with his arms, perform fine manipulations with his fingers, and grasp, turn, and twist objects with his hands. (AR 823-24.) Dr. Simon claimed Plaintiff constantly "experience[ed] pain or other symptoms severe enough to interfere with attention and concentration needed to perform simple work tasks." (AR 823.)

Though not discussed in the Questionnaire, Dr. Simon's six-year history treating Mr. Kovach ostensibly supported his opinions. Based on the VA medical treatment records included in the Administrative Record,[5] Dr. Simon interacted with Plaintiff at

---

[4] "Dyspnea" is defined as difficult or uncomfortable breathing, resulting in shortness of breath. See Childress v. Colvin, 845 F.3d 789, 790 (7th Cir. 2017); Martinez v. Colvin, No. 14cv3043, WL 1241537, at *1, *3 (S.D. Cal. Mar. 30, 2016).

[5] The "Confidential San Diego VA SSA/DDS Standard Summary" from the Veteran's Association San Diego Healthcare System, submitted by Plaintiff in the Administrative Record as Exhibit 1F, included only a portion of the treatment records preceding October 31, 2014, the date the report was issued.

least 22 times between July 19, 2013 and May 16, 2017, and treated Plaintiff for numerous different conditions.[6] (See AR 425-511, 443-93, 634-821.) Sixteen of those interactions were office visits, and the remaining consultations were performed over the phone. The VA medical records also included Plaintiff's treatment records from other providers within the VA. There are detailed progress notes for twelve of Plaintiff's office visits with Dr. Simon, from June 17, 2014 to May 16, 2017. At each of those visits, Dr. Simon noted that Plaintiff was "general[ly] alert, oriented to person place and time, not in cardiopulmonary distress," and his "neurologic CNs [were] intact, motor [strength] was 5/5, sensory 100%, [and] reflexes 2/4 in all extremities." (See AR 607 (June 17, 2014); see also AR 596 (July 21, 2014), 576 (November 7, 2014), 568 (February 11, 2015), 782 (May 4, 2015) 717-18 (August 14, 2015), 705 (January 20, 2016), 691 (September 8, 2016), 683 (September 23, 2016), 653 (March 2, 2017), 644 (March 8, 2017), 637 (May 16, 2017).)

### 1. Heart failure and edema

VA records document Plaintiff's heart failure and related edema as early as January 3, 2014, when imaging during an emergency room visit for an unknown

_____

(See AR 425-511.) Specifically, the section summarizing "Outpatient Encounters" notes inclusion of "max 150 occurrences or 2 years," and appears to reflect two years' worth of occurrences from November 1, 2012 to October 31, 2014. (See AR 427-39.) The "Progress Notes" section notes that it reflects "max 40 occurrences or 2 years." (AR 443.) Despite the fact that the Outpatient Encounters section indicates regular treatment between November 2012 and June 12, 2014, the earliest Progress Note is dated June 12, 2014. (See AR 443-93.) This evidence suggests that the Progress Notes were limited by number of occurrences and excluded occurrences prior to June 12, 2014. (See AR 425, 427, 443.) Exhibit 4F is another "Confidential San Diego VA SSA/DDS Standard Summary" dated April 29, 2015. (AR 530-633.) Using the same limitation parameters discussed above, it includes Outpatient Encounters from July 19, 2013 to April 28, 2015, (AR 531-44) and Progress Notes from June 17, 2014 to April 28, 2015, (AR 548-612). Exhibit 5F of the Administrative Record, (AR 634-821), is also comprised of medical treatment records from the VA Healthcare System. Those records include Progress Notes from May 4, 2015 to May 16, 2017. (AR 634-785.)

[6] While the Administrative Record evidences many diagnoses, the Court will only summarize those relevant to motions currently before the Court. Though relevant, Plaintiff's ongoing diagnosis of obesity is also not discussed here, since it was constant, and this opinion was not rejected by the ALJ. (See AR 46.)

complaint confirmed prominent subcutaneous edema in both calves, enlarged lymph nodes, and "cephalization and mild edema . . . consistent with moderate left ventricular failure." (AR 437, 502, 625; see also AR 466 (Dr. Simon noting on July 3, 2014 that Plaintiff had suffered from diastolic dysfunction for two years).) Since that date, Dr. Simon has treated Plaintiff's hypertension, mild diastolic dysfunction, and edema with medication and recommended lifestyle changes, such as smoking cessation and weight loss. (See, e.g., AR 609, 638-39, 646, 654, 706, 719, 784.) At his regular office visits, Plaintiff's edema in his lower extremities vacillated with no apparent pattern between no edema (twice), G1 edema (five times), G2 edema (four times), and G3 edema (once). (AR 576, 596, 607, 637, 644, 653, 683, 691, 705, 718, 782.) Frontal chest radiograph taken on June 11, 2014 in relation to an unrelated surgery indicated that Plaintiff's mild interstitial pulmonary edema had increased in the five months since January 3, 2014. (AR 621-22.)

Plaintiff was admitted to the emergency room on June 14, 2014, complaining of pain of 8/10, swelling, and redness in his right leg. (AR 766-67.) Plaintiff explained that he recently had swelling in both legs, but his right leg had become much bigger within the last day, and was worse with standing or walking, but improved with rest. (AR 767, 769.) The emergency room doctor at the VA noted "significant pitting edema [in] both lower extremities, right much greater than left." (AR 770.) Testing ruled out deep vein thrombosis and confirmed bilateral calf edema. (AR 770, 793.) As treatment for possible cellulitis, Plaintiff was advised to increase one of his medications, elevate his legs and avoid dangling, offered compression wraps (which he denied), and advised to follow up with his primary care doctor. (AR 770.)

Plaintiff complained to Dr. Simon of "squeezing" chest discomfort with exertion and body movements on August 14, 2015, prompting Dr. Simon to order an exercise tolerance stress test, which Plaintiff underwent on August 24, 2015. (AR 710-16.) Plaintiff reported to the cardiologist administering the stress test that for the last several years, he had experienced occasional squeezing chest pain that sometimes

8

radiated to his neck with exertion as minimal as turning the steering wheel, stress or exhaustion. (AR 711.) The stress test was stopped after roughly five and a half minutes when Plaintiff had reached only 78 percent of his predicted maximum heart rate because Plaintiff experienced shortness of breath. (AR 711.) This indicated a poor functional capacity and the test was deemed non-diagnostic because Plaintiff's heartrate and time performing the test were inadequate. (AR 711-12.) On September 22, 2015, Plaintiff was fitted for thigh-high compression stockings to treat his edema. (AR 709.) On January 20, 2016, Plaintiff denied having chest pain to Dr. Simon and declined further imaging of his heart. (AR 706.) On the same date, Dr. Simon issued Plaintiff a large home blood pressure monitor. (AR 701.) Plaintiff again denied chest pain on September 8, 2016. (AR 692.)

## 2. Joint pain

The VA records indicate that Plaintiff suffered from chronic back pain and right shoulder pain as early as June 17, 2014, when Dr. Simon recommended treatment with home physical therapy exercises for Plaintiff's back, and Plaintiff declined physical therapy for his shoulder. (AR 609.) On July 21, 2014, Plaintiff reported a pain level of 6/10, and described constant, chronic pain in his lower back and neck. (AR 599.) Dr. Simon assessed Plaintiff for back and right shoulder pain. (AR 597.) During an August 4, 2014 telephone call with Dr. Simon, Plaintiff reported "bilateral hand pain and stiffness of the dip and pip joints which is worse at the end of the day, lumbar spinal pain with radiation to both buttocks, as well as neck pain." (AR 448.) Dr. Simon noted that he would order hand, neck, and lower back x-rays to document Plaintiff's degenerative joint disease. (AR 448.)

On November 7, 2014, at an office appointment, Plaintiff reported chronic, constant neck pain, presently at a pain level of 4/10 that had been ongoing for years. (AR 578.) Dr. Simon again assessed Plaintiff for back and right shoulder pain and diagnosed him with chronic back pain. (AR 532, 577.) At a February 11, 2015 office visit with Dr. Simon, Plaintiff reported continued constant, chronic arthritic pain, particularly

in his hands and feet with a pain level of 8/10.  (AR 566, 572.)  Imaging (x-rays) taken of Plaintiff's hands and wrists on March 6, 2015, in response to Plaintiff's complaints of stiffness, numbness, and difficulty grasping in his hands and fingers, showed moderate osteoarthritis of the first carpometacarpal joint and STT joints of the left hand and wrist, and mild osteoarthritis in the same joints on the right hand and wrist.  (AR 617-21.)  Based on this evidence of degenerative joint disease, Dr. Simon referred Plaintiff to occupational therapy.  (AR 571.)

At an office visit on May 4, 2015, Plaintiff reported pain of 7/10.  (AR 782.)  Dr Simon noted crepitus, or grating sensation, in Plaintiff's knees and assessed him for right shoulder pain, back pain, chronic knee pain, and foot pain.  (AR 782, 784.)  At an August 14, 2015 office visit, Plaintiff reported chronic, constant pain in his hands and fingertips, at a level of 6-7/10.  (AR 720.)  Dr. Simon's assessment notes back and right shoulder pain.  (AR 719.)  During his January 20, 2016 appointment with Dr. Simon, Plaintiff denied pain that day, but discussed his concerns regarding the stress of life and his present circumstances.  (AR 702-03.)  Dr. Simon assessed Plaintiff with ongoing back and right shoulder pain.  (AR 706.)

Dr. Simon examined Plaintiff again on September 8, 2016, after Plaintiff slipped and hurt his left arm.  (See AR 689, 695.)  Plaintiff denied pain, though Dr. Simon addressed back pain in his assessment.  (AR 692-93.)  An x-ray taken to assess Plaintiff's left arm after his fall noted "degenerative changes at acromioclavicular joint."  (AR 792.)  During his September 23, 2016 appointment with Dr. Simon for another procedure related to his left elbow injury, Plaintiff denied pain, (AR 685), and Dr. Simon again assessed back pain, (AR 684).

On March 2, 2017, Plaintiff saw Dr. Simon in his office, and complained of acute pain in his right kidney area, level 3/10.  (AR 656.)  Dr. Simon again assessed Plaintiff's back pain.  (AR 654.)  Plaintiff returned to Dr. Simon's office on March 8, 2017, again complaining of pain in his right flank, this time 8/10.  (AR 642-46.)  Again, Dr. Simon assessed Plaintiff's back pain and recommended home exercises.  (AR 646.)  On May 16,

2017, Plaintiff saw Dr. Simon in connection with his functional capacity paperwork. (AR 634.) Plaintiff reported chronic, constant lower back pain, then 4/10, right shoulder pain, and difficulty bending, stooping, and standing for prolonged periods, and an inability to exercise. (AR 634, 637, 640.) Dr. Simon assessed Plaintiff with back pain (for which he recommended exercises at home) and stated that he would check x-rays to determine whether physical therapy would be appropriate for treatment of the shoulder. (AR 639.)

**B.    The ALJ's Reasons for Assigning Little Weight to Dr. Simon's Opinion**

The ALJ assigned Dr. Simon's RFC opinion little weight. (AR 52.) In a single paragraph discussing Dr. Simon's opinion, the ALJ briefly summarized Dr. Simon's RFC assessment, then rejected it based on its alleged inconsistencies with: (1) the evidence of record, (2) the opinions of State agency medical consultants, (3) the opinions of consultative examiners, (4) Plaintiff's activities of daily living, and (5) Plaintiff's work activity. (AR 52.) The ALJ specifically cited findings in the medical record that Plaintiff had full strength, normal sensory function, and intact reflexes on September 23, 2016, and that Plaintiff had no significant musculoskeletal deformities or joint swelling, normal range of motion, a normal gait, and was in no acute distress on January 21, 2017. (AR 52.)

**1.    Inconsistency with "the evidence of record"**

The ALJ's first reason for discounting Dr. Simon's opinion was its inconsistency with "the evidence of record." (AR 52.) Inconsistency between a treating physician's opinion and medical evidence in the record can be a specific, legitimate reason to discount the treating physician's opinion. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings."); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between [the treating physician's q]uestionnaire responses and her medical records provides an

18cv1848-GPC (MSB)

additional specific and legitimate reason for rejecting [the treating physician's] opinion of [the claimant's] limitations.").

When an ALJ discounts a treating physician's opinion because it is inconsistent with the medical record, the ALJ must identify the particular notes establishing the inconsistency. <u>See</u> <u>Stewart v. Colvin</u>, 575 F. App'x 775, 777 (9th Cir. 2014). The ALJ cannot merely offer conclusions but must set forth her own interpretations and explain why those interpretations are more correct than the treating doctor's. <u>Orn</u>, 495 F.3d at 632. Furthermore, the ALJ cannot selectively isolate notes and must consider the treatment record as a whole. <u>See</u> <u>Martinez v. Berryhill</u>, 721 F. App'x 597, 599 (9th Cir. 2017) ("The ALJ [improperly] isolated two treatment notes that reflected some improvements, rather than considering the treatment records as a whole."); <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding that the ALJ may not "cherry pick" portions of record to support a conflict with the treating physician's opinion when the ALJ isolated a physician's characterization of a patient's demeanor instead of considering the characterization in the context of the physician's diagnoses of the patient). However, the ALJ is not required to discuss every piece of evidence, <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003), just the significant probative evidence the ALJ is rejecting, <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir. 1981)).

Plaintiff argues the ALJ selectively isolated the notes from only two medical visits to support her conclusion that Dr. Simon's opinion conflicts with the evidence of record, and that even those two treatment notes were taken out of context. (<u>See</u> ECF No. 14-1 at 5-7.) Plaintiff further argues that in concluding that the record was inconsistent, the ALJ failed to set forth her own interpretations as to why her conclusions, rather than Dr. Simon's are correct. (<u>Id.</u> at 6-7.) Conversely, Defendant takes the position that the ALJ's detailed discussion of the physical examination findings throughout her analysis of Plaintiff's RFC supported the ALJ's conclusion that Dr. Simon's opinion contradicted the medical treatment evidence. (<u>See</u> ECF No. 15-1 at 4-6.)

The ALJ's opinion considered in its entirety suggests that when the ALJ discussed the "evidence of record" as a basis for rejecting Dr. Simon's opinion, (AR 52), she was referring to the medical treatment records she had reviewed in detail on the previous pages. (See AR 50-51.) Because an ALJ can meet her duty to provide specific, legitimate reasons supported by substantial evidence by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings," the ALJ's discussion of the medical record and the ways in which it conflicts with certain restrictions elsewhere in her opinion should be considered in evaluating her rejection of Dr. Simon's RFC opinion. See Tommasetti, 533 F.3d at 1041.

The ALJ provided multiple citations to Plaintiff's clinical examinations with VA medical providers and consultative examiners that found Plaintiff had exhibited full strength (June 2014, July 2014, Nov. 2014, Feb. 2015, June 2015, Aug. 2015, Jan. 2016, Sept. 2016, Mar. 2017, May 2017), intact sensation (June 2014, July 2014, Nov. 2014, Dec. 2014, July 2015, Aug. 2015, Jan. 2016, Sept. 2016, Mar. 2017, May 2017), intact reflexes (June 2014, July 2014, Nov. 2014, Dec. 2014, Feb. 2015, Aug. 2015, Jan. 2016, Sept. 2016, Mar. 2017, May 2017), was neurologically intact (July 2014, Feb. 2015, Apr. 2017), had full range of motion (Dec. 2014), had no cervical compression (Dec. 2014), had no discomfort when walking or had a normal gait (Dec. 2014, June 2015, Jan. 2017), had no hand deformities (Dec. 2014), was not in acute distress (June 2015, Jan. 2017), had good stability (July 2015), good coordination (July 2015), normal muscle strength and tone (July 2015, Apr. 2017), ambulated independently (July 2015), no pain (Jan. 2016, Sept. 2016, Mar. 2017), adequate ankle range of motion and strength (Jan. 2017), no musculoskeletal deformities (Jan. 2017), no joint swelling (Jan. 2017), and no edema (Mar. 2017). (AR 50.) The ALJ provided her most detailed explanation of inconsistencies by noting that difficulties standing or walking are inconsistent with normal gait, debilitating pain is inconsistent with regularly denying pain, debilitating symptoms are inconsistent with "no acute distress," and difficulty handling and fingering is

inconsistent with normal grip strength and ability to perform hand manipulations.  (AR 51.)

The ALJ adequately supported her rejection of some portions of Dr. Simon's opinions regarding Plaintiff's RFC.  The ALJ's citations to incidents when Plaintiff denied being in pain, was able to focus and answer questions, and was not in acute distress, were sufficient, specific inconsistencies with Dr. Simon's opinion that Plaintiff's symptoms were severe enough to <u>constantly</u> interfere with his attention and concentration as needed to perform even simple work tasks.  (<u>See</u> AR 50, 52-53.) Similarly, Plaintiff's examination showing full hand strength and ability to manipulate his hands in various positions, and Dr. Simon's regular examinations with normal clinical findings as to strength, reflexes, and sensory ability cited by the ALJ are specific inconsistencies that demonstrate that Dr. Simon's RFC opinion, permitting only rare (1-5% of the day) movement of the head and neck, is not supported by medical evidence. (<u>Compare</u> AR 50 <u>with</u> AR 824.)

Nevertheless, the ALJ's disregard of other substantial medical treatment records is concerning, specifically the ALJ's conclusion that "the evidence of record does not support ongoing symptoms that would impact the ability to perform work activity" due to Plaintiff's heart failure.  (AR 46.)  The ALJ disregarded medical records and clinical findings regarding Plaintiff's heart failure and edema, except for a single report of no edema on March 2017.  (AR 50, 51.)  In so doing, the ALJ excluded the following from her analysis:  heart imaging results showing progression of Plaintiff's condition, at least ten incidents where Dr. Simon reported Plaintiff's lower extremity edema, Plaintiff's emergency room visit in July 2014 due to painful edema where he received instructions to avoid certain behaviors that would impair leg circulation, at least one telephone call from Plaintiff reporting edema to Dr. Simon, and treatment with extensive medications and compression stockings.  (<u>See</u> <u>supra</u>, section V.A.1.)  The ALJ's discussion of only a single incident of the absence of edema does not fairly represent the Plaintiff's treatment record for this condition, and does not explain the ALJ's reasoning for

14

reaching a conclusion different from that of Plaintiff's treating physician.  See Treichler v. Comm'r Soc. Sec. Admin., 454 F.3d 1090, 1103 (9th Cir. 2014) ("[The court] cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").  Based on the record before it, the Court cannot ascertain whether those facts were reviewed and considered by the ALJ.  See Buchanan v. Colvin, 636 F. App'x 414, 415 (9th Cir. 2016) ("An ALJ's 'silent disregard' of relevant evidence 'thus leaves us . . . with nothing to review to determine whether the error materially impacted the ALJ's ultimate decision.'") (quoting Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006)).

Because the ALJ did not identify inconsistencies with the record to support her rejection of Dr. Simon's opinion that Plaintiff's heart failure limited his ability to perform work activities, and because the ALJ selectively cited the treatment record, mainly to the evidence of normal clinical findings, ignoring complaints and treatment of Plaintiff's heart condition condition, the Court does not find that inconsistency with the record was a legally sufficient reason to discount Dr. Simon's opinion the way the ALJ did.

**2.    Inconsistency with the opinions of "State agency medical consultants"**

Next, the ALJ discounted Dr. Simon's opinion because it was "inconsistent with . . . the opinions of [s]tate agency medical consultants."  (AR 52.)  The existence of a physician's opinion that contradicts the treating physician's opinion simply determines the applicable standard—whether the ALJ must provide (1) clear and convincing reasons, or (2) specific and legitimate reasons supported by substantial evidence—to reject the opinion of a treating or examining physician.  See Orn, 495 F.3d at 632; Lester, 81 F.3d at 830.  The existence of a contradiction among medical opinions alone cannot constitute substantial evidence for discounting a treating physician's opinion.  See Widmark v. Barnhart, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006) (finding that the conclusory medical opinion of a state agency reviewing physician was sufficient to establish a conflict among medical opinions, but the opinion alone cannot constitute substantial evidence to reject the conflicting medical opinion outright).

Here, the ALJ considered the opinions of non-examining state medical consultants E. Cooper, M.D. and S. Lee, M.D, which concluded that Plaintiff had either non-severe impairments or severe impairments causing much less restrictive RFCs than Dr. Simon opined. (See AR at 51-52; compare AR 177-78, 194-98, 205-07 with AR 822-25.) Though these opinions are factors in determining the standard of review the Court applies, the Court finds they were not a legally sufficient reason to discount Dr. Simon's opinion.[7]

### 3. Inconsistency with the opinions of "consultative examiners"

Next, the ALJ discounted Dr. Simon's opinion because it was "inconsistent with . . . the opinions of consultative examiners." (AR at 52.) An examining physician's contradictory opinion can constitute substantial evidence if it relies on "independent clinical findings that differ from the findings of the treating physician.'" Orn, 495 F.3d at 632 (citation omitted). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citation omitted). The ALJ specifically discussed the conflicting opinions of two consultative examiners—Dr. Curran and Dr. Shore—which she later referenced as among the reasons she assigned little weight to Dr. Simon's opinion. (AR 51-53.)

On December 10, 2014, Board Certified orthopedist, William Curran, M.D. ("Dr. Curran"), conducted an orthopedic physical examination of Plaintiff at the Department of Social Services' request to evaluate Plaintiff's functional limitations related to his complaints of low back and neck pain. (See AR 522-28.) As part of his examination, Dr. Curran measured and tested Plaintiff's body in many ways. (See AR 522-28.) This

---

[7] Because the Court finds this reason legally insufficient based on the nature of the opinion (non-examining), the Court does not here reach Plaintiff's arguments regarding the relative weight to assign the different opinions. (See ECF No. 14-1 at 7-9.) Nevertheless, the Court agrees with Defendant that the ALJ did specifically address the timing of each of these doctors' opinions, and the medical records that were not considered at the time of the opinion, when weighing the opinions. (See ECF No. 15-1 at 9-10; AR 51-52.)

examination took place after Plaintiff had complained to Dr. Simon of hand pain.  (AR 448.)  Though Dr. Curran found palpable tenderness of Plaintiff's cervical spine, he found no evidence of swelling, effusion, erythema, warmth, or deformity of the hips, knees, ankles, shoulders, elbows, wrists, and low back.  (AR 525.)  Dr. Curran reported that Plaintiff could manipulate the "a pen with ease," pinch, and "approximate fingers and make a fist without difficulties bilaterally."  (AR 525.)  He noted full range of motion throughout Plaintiff's body, normal muscle and grip strength, sensation, and reflexes.  (AR 525-26.)  Dr. Curran concluded that Plaintiff had no exertional, postural, manipulative, or environmental limitations.  (AR 525-28.)  The ALJ specifically referenced Dr. Curran's findings when she found that the objective findings did not support Plaintiff's allegation of disabling symptoms, which were substantially similar to Dr. Simon's opinions.  (AR 50.)  The ALJ cited Dr. Curran's findings again when she explained, "[d]espite allegations of difficult handling and fingering the claimant had normal grip strength and he was able to perform hand manipulations."  (AR 51.)

On December 8, 2014, licensed psychologist, Ted Shore, Ph.D. ("Dr. Shore"), conducted a complete psychological examination of Plaintiff at the Department of Social Services' request, and found no limitations on Plaintiff's ability to participate in many work-related activities and that he had the "intellectual and emotional capacity to function adequately in a work setting."  (AR 53, 519.)  Based on his assessment, Dr. Shore concluded that Plaintiff was able to follow simple instructions, perform detailed tasks, perform complex tasks, sustain an ordinary work routine, maintain adequate work concentration, interact appropriately with others, maintain regular attendance, manage stress in a work setting, and manage funds on his own behalf.  (AR 518-19.)  The ALJ relied specifically on Dr. Shore's finding that Plaintiff had "normal memory and appropriate mood" when assessing Plaintiff's RFC and rejecting Dr. Simon's opinion that Plaintiff's "pain and symptoms were constantly severe enough to interfere with the attention and concentration needed to perform simple work tasks."  (See AR 52.)

The findings of Drs. Curran and Shore relied on their own independent examinations, which were not considered by Dr. Simon. Because of this, the ALJ properly relied on the contradictory opinions of the commissioner's examining physicians as specific, legitimate reasons supported by substantial evidence to discount Dr. Simon's opinion. See Allen, 749 F.2d at 579 (finding that a non-treating physician's medical opinion constituted substantial evidence since the physician's findings rested on his own neurological examination of the claimant); Tonapetyan, 242 F.3d at 1149 (finding an examining physician's opinion "alone constitutes substantial evidence, because it rests on his own independent examination").

### 4. Inconsistency with Plaintiff's activities of daily living

The ALJ next discounted Dr. Simon's opinion because it was "inconsistent with . . . claimant's activities of daily living." (AR 52.) Plaintiff argues that the ALJ's assessment of Plaintiff's daily activities failed to demonstrate that they were in fact inconsistent with Dr. Simon's RFC opinion. (ECF 14-1 at 10-11.) Defendant argues that "it is incongruent that Plaintiff could perform all these activities while sustaining the limitations Dr. Simon opined – i.e. if he could only rarely move his head in any direction, walk/stand no more than two hours, and walk no more than one block without rest." (ECF No. 15-1 at 11.)

Inconsistency between a treating physician's opinion and a plaintiff's daily activities is a specific and legitimate reason to discount the treating physician's opinion. Ghanim, 763 F.3d at 1162. The ALJ must develop the record with specific detail, demonstrating how the daily activities are inconsistent with the physician's opinion. See Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017).

The ALJ summarized all of Plaintiff's activities of daily living from the record, noting that Plaintiff reported the following activities: attending to personal hygiene, performing chores, using a computer, reading, driving, managing funds, building model cars, shopping, running errands, caring for his tropical fish, riding a bicycle, using public transportation, watching television, feeding himself, and attending GED courses all day

Monday through Thursday.  (AR 52.)  Noting that some of these abilities would support Plaintiff's employment ability, the ALJ concluded that "claimant's ability to participate in such activities is inconsistent with the claimant's alleged symptoms and limiting effects."  (AR 52.)  The ALJ offered no greater detail to her analysis when she discussed Dr. Simon's opinion.  (See AR 52.)

As to the majority of the listed activities of daily living, the ALJ's opinion failed to establish that Plaintiff's activities of daily living were performed in such a manner or occurred at such a frequency that they conflicted with Dr. Simon's opinion.  See Trevizo, 871 F.3d at 676 ("Absent specific details about [claimant's] childcare responsibilities, those tasks cannot constitute 'substantial evidence' inconsistent with [the treating physician's] informed opinion, and thus the ALJ improperly relied on [claimant's] childcare activities to reject the treating physician opinion."; Martinez v. Berryhill, 721 F. App'x at 599-600 ("And the ALJ cited some evidence that [claimant] was engaged in daily activities, but it appears those activities were largely aspirational and, in any event, the activities do not suggest that [claimant] could function in the workplace.").  The exception is Plaintiff's attendance of GED courses.  On April 13, 2015, Plaintiff reported that he was attending GED classes all day, Monday through Thursday, and had been for a year.  (AR 556; see also AR 515.)  Plaintiff also testified at the administrative hearing on July 26, 2017, that he went back to school when his disability case began, and he hoped to earn his GED soon.  (AR 65.)  On this issue, there were sufficient facts in the Administrative Record for the ALJ to conclude Plaintiff's attendance of GED classes "all day" was inconsistent with Dr. Simon's RFC opinions that Plaintiff could sit for only two hours in work day, could only rarely turn his head in any direction or hold it in a static position, and was constantly experiencing pain severe enough to interfere with his attention and concentration.  See Alo v. Berryhill, 766 F. App'x. 512, 514 (9th Cir. 2019) (finding activities of daily living substantiated discounting treating physician's opinion where administrative record included detail that demonstrated inconsistency).

1  The Court therefore finds that the ALJ provided a legally sufficient reason for

2  discounting the opinion of Dr. Simon by relying on the inconsistency between Dr.

3  Simon's opinion and Plaintiff's daily activities.

4  **5.    Inconsistency with Plaintiff's work activity**

5  The ALJ's final reason for discounting Dr. Simon's opinion was because it was

6  "inconsistent with . . . claimant's work activity."  (AR 52.)  While Plaintiff does not

7  address this purported conflict, (see ECF 14-1), Defendant argues that Plaintiff's work

8  activity contradicts Dr. Simon's opinion.  (ECF No. 15-1 at 7.)

9  Inconsistency between a treating physician's opinion and a plaintiff's work activity

10  is a specific and legitimate reason to discount the treating physician's opinion.  See

11  Towne v. Berryhill, 717 F. App'x 705, 707 (9th Cir. 2017).

12  The ALJ discussed Plaintiff's testimony about his work activity in some detail.  (See

13  AR 49.)  Since 2004, Plaintiff has worked as a security guard.  (AR 368.)  At the time of

14  his July 26, 2017 hearing before the ALJ, Plaintiff testified that he usually worked two to

15  three days a week at the North Park Observatory/West Coast Tavern, four-and-a-half to

16  five hours at a time.  (AR 65-66, 70.)  His job duties included "watching one of the exit

17  doors and observing the patrons and making sure everything is okay."  (AR 71.)  He said

18  the work causes him problems in his lower back and his hands get numb.  (AR 71.)  Until

19  roughly September of 2016, Plaintiff had worked at a high-end night club downtown

20  called Park, with a similar schedule.  (AR 66.)  When the ALJ asked Plaintiff why he was

21  not working more hours, Plaintiff responded, "there's no more hours available and

22  physically and it's very hard for me to try to work anymore hours these days."  (AR 68.)

23  The ALJ expressly stated that "claimant was able to perform considerable work activity

24  after the alleged onset date (Hearing Testimony).  The claimant's ability to stand[], walk,

25  and persist at these positions [is] inconsistent with the claimant's allegations of

26  debilitating symptoms."  (AR 51.)

27  The record on Plaintiff's work activity is sufficiently detailed to demonstrate that

28  there are specific inconsistencies between Plaintiff's work activities and Dr. Simon's RFC

opinion.  Plaintiff's testimony regarding the length and nature of his sustained work activity contradicts Dr. Simon's sitting and standing restrictions, the need to take unscheduled breaks, the inability to maintain attention and concentration sufficient for simple work tasks.  (See AR 823-24.)  The Court finds it significant that when the ALJ asked Plaintiff why he did not work more, Plaintiff first mentioned that no more shifts were available, before stating that it would be difficult to perform the work.  (See AR 68.)  This testimony was consistent with statements Plaintiff made to his doctors, explaining that he was having financial difficulty because of sparse work and unemployment, without mentioning any difficulty working due to disability.  (See, e.g., AR 450, 469.)

The ALJ did not err by concluding that Plaintiff's ongoing work activities conflicted with Dr. Simon's RFC opinion.  Accordingly, the Court finds that the ALJ provided a legally sufficient reason for discounting the opinion of Dr. Simon by relying on the inconsistency between Dr. Simon's opinion and Plaintiff's work activity.

**C.      The ALJ's Consideration of the 20 C.F.R. § 404.1527(c)(2)-(6) Factors**

Plaintiff argues the ALJ failed to consider required factors before determining how much weight to assign to a treating physician's opinion:  examining relationship, length and nature of treatment relationship, supportability, consistency, specialization, and a catch-all category of "other factors" brought to the ALJ's attention.  (ECF 14-1 at 12); see also 20 C.F.R. 20 C.F.R. § 404.1527(c)(2)-(6).[8]

Where substantial evidence in the record contradicts the treating physician, his opinion is no longer entitled to controlling weight.  Orn, 495 F.3d at 632 (citing 20 C.F.R. § 404.1527(c)(2)).  That does not mean that the opinion should be rejected, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Social Security Ruling 96-2p;

---

[8] Defendant did not present an argument on this issue to the Court.  (See ECF 15-1 at 7-15.)

18cv1848-GPC (MSB)

see also Orn, 495 F.3d at 632-33 ("In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference."). It is reversible legal error if an ALJ fails to consider the factors pursuant to 20 C.F.R. § 404.1527(c)(2)-(6). Trevizo, 871 F.3d at 676. "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. at 675. However, courts in our district have held that Trevizo does not "demand a full-blown written analysis of all the regulatory factors; it merely requires some indication that the ALJ considered them." Hoffman v. Berryhill, No. 16-cv-1976-JM-AGS, 2017 WL 3641881, at *1, *4 (S.D. Cal. Aug. 24, 2017) report and recommendation adopted by 2017 WL 4844545 (S.D. Cal. Sept. 14, 2017); see also Yantos v. Berryhill, No. 15cv02733, 2018 WL 899126, at *1, *6 (S.D. Cal. Feb. 14, 2018) ("[T]he Ninth Circuit has never compelled such a specific analysis. The ALJ is certainly required to consider all of the factors, but the regulations and rulings contain no requirement that each and every factor be specifically analyzed in an ALJ's decision.").

Here, the ALJ stated in her opinion, "[t]he undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and 416.927 and SSR 17-2p." (AR 49.) Plaintiff concedes that the ALJ considered one of the factors—consistency, but argues consistency is the only factor the record indicates the ALJ considered. (ECF 14-1 at 12.) It is conspicuous that the ALJ's decision did not identify Dr. Simon as Plaintiff's treating physician. (See AR 43-54.) When the ALJ addressed Dr. Simon in her opinion, she only referenced his May 2017 RFC opinion, but did not address the duration, nature, or frequency of the treatment relationship. (See AR 52.) Although the ALJ cited to multiple notes in the VA treatment records, which

22

included Dr. Simon's records, she never distinguished Dr. Simon's medical records from those of other VA medical providers, or even the consultative examiners. (<u>See</u> AR 50.) It is also significant that the ALJ never addressed the specialties of the various medical experts—and instead identified the examining and consulting doctors as simply "[s]tate agency medical consultant" or "consultant examiner," instead of, for instance, orthopedist or psychologist. (<u>Compare</u> AR 51-52 <u>with</u> AR 519, 528.)

This Court cannot conclude, based on the record before it, that the ALJ considered the relevant factors prior to determining how much weight to give Dr. Simon's opinion. There is no indication in the ALJ's opinion that she considered Dr. Simon's opinion that of a treating physician, that she contemplated the duration or frequency of the treatment relationship, or that she considered the specialties of the various doctors who offered opinions in this case. These factors would have been significant to analyzing the impact of Plaintiff's heart failure and related edema on Plaintiff's RFC. For instance, because consultative examiner, Dr. Curran, was an orthopedist who did not consider Plaintiff's heart failure and edema or the impact they might have on Plaintiff's ability to sit, stand, or walk, his contradictory opinion had limited value for evaluating Dr. Simon's opinion. Similarly, the significance of Plaintiff's work activities may have been different to the ALJ when viewed in light of Dr. Simon's extensive treatment of Plaintiff's heart failure and edema. Therefore, the ALJ committed reversible error by assigning little weight to the treating physician's opinion without considering the relevant regulatory factors. <u>See, e.g.</u>, <u>Krebs v. Berryhill</u>, No. 16CV3096 JLS (BGS), 2018 WL 1001118, at *7-8 (S.D. Cal. Feb. 20, 2018) (finding reversible legal error where the ALJ did not consider "factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician"), report and recommendation adopted, 2018 WL 1400653 (S.D. Cal. Mar. 20, 2018); <u>Clark v. Berryhill</u>, No. 16-CV-2854-BEN-AGS, 2018 WL 620144, at *3 (S.D. Cal. Jan. 29, 2018) (finding reversible error where there was "no indication that the ALJ

considered certain mandatory factors, such as 'the length of the treating relationship, the frequency of examination, [or] the nature and extent of the treatment relationship.'"), report and recommendation adopted in part, 2018 WL 948489 (S.D. Cal. Feb. 20, 2018); cf. Torres v. Berryhill, No. 3:17-CV-01273-H-PCL, 2018 WL 1245106, at *6 (S.D. Cal. Mar. 9, 2018) (finding the record demonstrated that the ALJ adequately considered the regulatory factors where "[t]he ALJ described Dr. Lopez as Plaintiff's 'treating physician,' showing that the ALJ was aware that Dr. Lopez examined Plaintiff and had a treatment relationship with him.")

## VI.  CONCLUSION AND RECOMMENDATION

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled Plaintiff is entitled, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

The Court is mindful of Ninth Circuit authority for the proposition that, where an ALJ failed to properly consider either subjective symptom testimony or medical opinion evidence, it is sometimes appropriate to credit the evidence as true and remand the case for calculation and award of benefits.  See Garrison v. Colvin, 759 F.3d 995, 1019-21 (9th Cir. 2014).  However, in Ghanim, 763 F.3d at 1166, a case decided after Garrison, another Ninth Circuit panel did not apply or even acknowledge the "credit as true" rule where substantial evidence did not support an ALJ's rejection of treating medical

18cv1848-GPC (MSB)

opinions and his adverse credibility determination; instead, the panel simply remanded the case for further administrative proceedings. And, in <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173-74 (9th Cir. 2015), the panel did not apply or acknowledge the "credit as true" rule where the ALJ had failed to even mention a treating source's opinion that the claimant was "pretty much nonfunctional"; instead, the panel simply remanded the case to afford the ALJ the opportunity to comment on the doctor's opinions.

Here, although Plaintiff asks the Court to credit Dr. Simon's opinion as true and remand for calculation of benefits because "[t]here are no outstanding issues that need to be resolved before a determination of disability can be made," (<u>see</u> ECF No. 14-1 at 13), the Commissioner has argued that the appropriate remedy in the event of reversal would be a remand for further administrative proceedings, (<u>see</u> ECF No. 15-1 at 15-18). The Court concludes that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision. After consideration of the regulatory factors, the ALJ may still discount Dr. Simon's opinion. Even if the ALJ gives Dr. Simon's opinion greater weight, that weight would still need to be factored into the ALJ's RFC findings, and if Plaintiff is found to be disabled, the onset date will need to be determined, as Defendant argues. (<u>See</u> <u>id.</u> at 15-16); <u>see also</u> <u>Guzman v. Berryhill</u>, 356 F. Supp. 3d 1025, 1040 (S.D. Cal. 2018).

For the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS ORDERED** that no later than **July 23, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 30, 2019**. The parties are advised that

failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  July 9, 2019

Honorable Michael S. Berg
United States Magistrate Judge

18cv1848-GPC (MSB)