UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

WILLIAM JOSEPH KOVACH,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

Case No.: 3:18-cv-01848-GPC-BLM

**ORDER ADOPTING REPORT AND
RECOMMENDATION DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

**[Dkt. Nos. 14, 15.]**

On August 7, 2018, Plaintiff William Joseph Kovach ("Plaintiff" or "Kovach"),
proceeding *in forma pauperis* and with counsel, filed this action seeking judicial review
of the Commissioner of Social Security's final decision denying Plaintiff's applications
for disability insurance benefits and supplemental security income. ECF No. 1. Plaintiff
subsequently filed a motion for summary judgment and Defendant responded with a
cross-motion for summary judgment. ECF Nos. 14, 15. On July 9, 2019, Magistrate

Judge Michael S. Berg issued a Report and Recommendation ("R&R") that Plaintiff's motion for summary judgment be granted and that Defendant's cross-motion for summary judgment be denied. ECF No. 18. No objections were filed. After consideration of the R&R, the pleadings, the supporting documents, and the applicable law, the Court adopts the R&R, **GRANTS** Plaintiff's motion for summary judgment, and **DENIES** Defendant's cross-motion for summary judgment.

## BACKGROUND

On July 7, 2014, Plaintiff filed applications for disability and disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. ECF No. 11-2, Administrative Record ("AR") at 44. In both applications, Plaintiff alleged that his disability began on January 1, 2011. *Id.* Plaintiff asserted disability based on a back disorder, degenerative joint disease, and obesity. *Id.* at 47. Plaintiff's claims were denied initially on January 30, 2015 and then again upon reconsideration on June 12, 2015. *Id.*

Afterwards, on June 17, 2015, Plaintiff filed a written request for an administrative hearing. *Id.* On July 26, 2017, Plaintiff appeared with counsel and testified before Administrative Law Judge Salena D. Bowman-Davis ("ALJ"). *Id.* On August 24, 2017, the ALJ issued a decision finding that Plaintiff was not disabled as defined under Title II and Title VI of the Act. *Id.* at 55. On July 3, 2018, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. AR 1-4.

On August 7, 2018, Plaintiff commenced this instant action seeking judicial review of the Commissioner's final decision. ECF No. 1. On October 26, 2018, Defendant answered and lodged the administrative record with the Court. ECF Nos. 10, 11. On

December 5, 2018, Plaintiff moved for summary judgment. ECF No. 14. On January 7, 2019, the Commissioner responded with a cross-motion for summary judgment in opposition to Plaintiff's motion. ECF No. 15, 16. On July 9, 2019, the Magistrate Judge issued its R&R. ECF No. 18.

## I.     The ALJ's Decision

ALJ Bowman-Davis applied the five-step sequential framework to determine that Plaintiff was not disabled. AR 45. She began the analysis by finding that Plaintiff met the insured status requirement for disability benefits through June 30, 2021. AR 45. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2011, the alleged onset date. AR 45. The ALJ found that although the Plaintiff worked after the alleged onset date, his earnings did not meet the minimum threshold for substantial gainful activity. AR 45-46.

At step two, the ALJ found that Plaintiff had the following severe impairments: disorder of the back, degenerative joint disease, and obesity. AR 46. In addition, the ALJ found that the Plaintiff had the following non-severe conditions: sleep apnea, chronic heart failure, and mental impairments. AR 46-47. The ALJ found that these non-severe conditions did not negatively impact Plaintiff's ability to work. AR 46-47.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 47.

Before step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "less than the range of light work" as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). AR 48. Specifically, the ALJ found that Plaintiff could "lift, carry, push, or pull 25 pounds frequently and 50 pounds occasionally." *Id.* Plaintiff

3

could stand or walk for six hours with normal breaks and sit for six hours with normal breaks. *Id.* The ALJ determined that the Plaintiff could occasionally crouch, crawl, stoop, and climb stairs, ramps, ladders, and scaffolds. *Id.* His limitations included pushing and pulling "no more than frequently with the upper extremities" and "no more than frequent[ ] use [of] hand controls." *Id.* In addition, the ALJ found that Plaintiff could not perform any repetitive pushing and pulling and could not perform more than frequent handling and fingering bilaterally, with no continuous handling or fingering. *Id.* Further, Plaintiff would need to avoid unprotected heights, workplace hazards, and more than occasional exposure to extreme temperatures. *Id.* Plaintiff would also need to avoid an occupation with high production quotas and a fast-paced work environment that would allow him to alternate sitting with standing or walking while performing the occupation. *Id.* In coming to this conclusion, the ALJ assigned treating physician Dr. Paul Simon's opinion little weight, and gave partial weight to the SSA's medical consultants. AR 51-53.

At step four, the ALJ found that Plaintiff's RFC allowed him to perform his past relevant work as a security guard. AR 54. Therefore, the ALJ concluded that Plaintiff was not disabled from January 1, 2011, through the date of the decision. *Id.*

## II.      Medical Evidence

### a.  Dr. Simon's Opinion

Dr. Paul Simon is the Plaintiff's primary care provider and began treating the Plaintiff on March 24, 2011 at the Veteran's Administration ("VA") San Diego Healthcare System. AR 426, 822. On May 16, 2017, Dr. Simon completed a physical residual functional capacity questionnaire in support of Plaintiff's claim for disability and reported that Plaintiff had been diagnosed with congestive heart failure, as presented in a

2D echo, and degenerative joint disease of the lower extremities, as identified by an x-ray. *Id*. Based on his longtime treatment of Plaintiff, Dr. Simon opined that Plaintiff's conditions would limit him to standing, sitting, and walking for less than two hours each in an eight-hour work day; that he could sit for up to thirty minutes at one time before needing to get up; could stand for 45 minutes at one time before needing to sit down/walk around; would require periods of walking around during an eight-hour work day; would require a job that permits positions at will from sitting, standing, or walking; and would need to take unscheduled breaks during an eight-hour period as well as elevate his legs after prolonged sitting. AR 823-824.

In addition, Dr. Simon noted that Plaintiff was not a malingerer, and that his prognosis was "poor." AR 822. He also observed symptoms of decreased exercise tolerance, dyspnea on exertion, and pain in his knees and lower back. AR 822. In the RFC questionnaire, Dr. Simon reported that Plaintiff could occasionally lift 20 pounds or less; could never climb a ladder; could rarely twist, bend, crouch, climb stairs, look down, turn head right or left, look up, or hold head in static position. AR 824. Additionally, Dr. Simon opined that, as a result of degenerative joint disease of the hands, Plaintiff would have limitations in reaching, handling, or fingering in in the form of using his hands for twenty percent of the workday. AR 824-825. Because of his ailments, Dr. Simon claimed that Plaintiff constantly "experience[d] pain or other symptoms severe enough to interfere with attention and concentration needed to perform simple work tasks." AR 823. The Plaintiff would experience good days and bad days – and would likely miss work more than four days per month. AR 824-825. According to Dr. Simon, these limitations did not become applicable until January 1, 2012. AR 825.

Dr. Simon's treating relationship with the Plaintiff is extensive and spans over six

years.  Based on the VA medical treatment records included in the Administrative Record, Dr. Simon treated Plaintiff for numerous different conditions and interacted with him at least 22 times between just July 19, 2013 and May 16, 2017.  *See* AR 425-511, 443-93, 634-821.  Sixteen of these interactions were in-office visits and the remaining consultations were performed over the phone.  For twelve of Plaintiff's office visits with Dr. Simon from June 17, 2014 to May 16, 2017, detailed progress notes suggest that Plaintiff was "general[ly] alert, oriented to person, place and, and time, and not in cardiopulmonary distress" with intact neurological CNs and motor strength."  *See* AR 607 (June 17, 2017); *see also* AR 596 (July 21, 2014), 576 (November 7, 2014), 568 (February 11, 2015).

### b.  Evidence of Plaintiff's Heart Failure and Edema

The VA medical records also included Plaintiff's treatment records from other providers within the VA.[1]  Specifically these records document Plaintiff's heart failure and related edema as early as January 3, 2014, when imaging during an emergency room visit for an unknown complaint confirmed prominent edema in both calves, enlarged lymph nodes, and cephalization consistent with left ventricular failure.  AR 437, 502, 625; *see also* AR 466.  Over the course of numerous regular office visits, Plaintiff's edema in his lower extremities remained present and Plaintiff's pulmonary edema also increased.  *See* AR 576, 596, 607, 637, 644, 653, 683, 691, 705, 718, 782, 621-22.  On June 14, 2015, Plaintiff was admitted to the emergency room, complaining of pain at level 8 on a scale of 10, swelling, and redness in his right leg.  AR 766-67.  The

---

[1] While the Administrative Record evidences many diagnoses, the Court will only summarize those relevant to motions currently before the Court.  Though relevant, Plaintiff's ongoing diagnosis of obesity is not discussed here, since it was constant, and this opinion was not rejected by the ALJ.

emergency room doctor at the VA noted "significant pitting edema [in] both lower extremities, right much greater than left" and that testing confirmed bilateral calf edema. AR 770. On September 22, 2015, Plaintiff was fitted for thigh-high compression stockings to treat his edema.

On August 14, 215, Plaintiff complained of "squeezing" chest discomfort, prompting Dr. Simon to order an exercise tolerance stress test. AR 710-16. Plaintiff underwent the test on August 24, 2015 and reported that he had experienced this chest pain – and subsequent neck pain – over the course of the last several years with minimal physical exertion such as turning the steering wheel. AR 711. After Plaintiff experienced shortness of breath, the stress test was stopped after only five and a half minutes when Plaintiff had reached only 78 percent of his predicted maximum heart rate. AR 711-12. The test was deemed non-diagnostic after it was aborted. AR 711-12.

### c. Evidence of Joint Pain

VA records also indicate that Plaintiff suffered from chronic back pain and right shoulder pain as early as June 17, 2014, when Dr. Simon recommended treatment with home physical therapy exercises. AR 609. On July 21, 2014, Plaintiff reported a pain level of 6/10 from a constant, chronic pain in his lower back and neck. AR 599. On August 4, 214, Plaintiff reported "bilateral hand pain and stiffness of the dip and pip joints which is worse at the end of the day, lumbar spinal pain with radiation to both buttocks, as well as neck pain." AR 448. Dr. Simon noted that he would order hand, neck, and lower back x-rays to document Plaintiff's degenerative joint disease. AR 448.

At an office visit with Dr. Simon on November 7, 214, Plaintiff reported chronic, constant neck pain presently at a pain level of 4 out of 10 that had been ongoing for years. AR 578. Dr. Simon diagnosed Plaintiff with chronic pain. AR 532, 577. At

another office visit on February 11, 2015, Plaintiff reported constant, chronic arthritic pain at a level 8 out of 10, especially in his hands and feet. AR 566, 572. X-rays taken of Plaintiff's hands and wrists on March 6, 2015, showed evidence of degenerative joint disease, namely moderate osteoarthritis of the first carpometacarpal joints and STT joints of the left hand and wrist, and mild osteoarthritis in the same joints on the right hand and wrist. AR 571, 617-21.

On May 4, 2015, Plaintiff presented again with joint pain at a level 7 out of 10. AR 782. Dr. Simon noticed crepitus, or a grating sensation, in Plaintiff's knees and assessed him for right shoulder pain, back pain, chronic knee pain, and foot pain. AR 782, 784. At an August 14, 2015 office visit, Plaintiff reported chronic, constant pain in his hands and fingertips at a level of 6-7 out of 10. AR 720. Dr. Simon's assessment noted back and right shoulder pain. On January 20, 2016, Dr. Simon assessed Plaintiff again with ongoing back and right shoulder pain. AR 706. During an office visit on September 8, 2016, Dr. Simon opined that Plaintiff had ongoing back pain and degenerative changes to his acromioclavicular joint in his left arm after a fall. AR 792. And in March and May of 2017, Plaintiff made additional office visits with Dr. Simon and reported chronic, constant lower back pain, right shoulder pain, difficulty bending, stooping, and standing for prolonged periods, and an inability to exercise. AR 634, 637, 640, 642.

## LEGAL STANDARD

### I. Standard of Review of Magistrate Judge's R&R

In reviewing a Magistrate Judge's R&R, "[a] judge of the court shall make a *de novo* determination of these portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d

3:18-cv-01848-GPC-BLM

614, 617 (9th Cir. 1989).  However, in the absence of timely objection, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72; Advisory Committee's Notes.  When no objections are filed, a district court may assume the correctness of the magistrate judge's findings and recommendations and decide the motion on the applicable law.  *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

## II.    Standard of Review for Commissioner's Final Agency Decision

Section 205(g) of the Act permits unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. § 405(g).  The reviewing court may enter a judgment affirming, modifying, or reversing the Commissioner's decision, and may also remand the matter to the Social Security Administrator for further proceedings. *Id.*

The scope of the reviewing court is limited; it may only "set aside the ALJ's denial by substantial evidence in the record as a whole."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (internal quotations omitted).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotations omitted).  However, "[e]ven when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## III.    Determination of Disability

In order to qualify for disability benefits under the Act, an applicant must show

3:18-cv-01848-GPC-BLM

that: (1) he suffers from a medically determinable impairment that can be expected to result in death, or which lasted, or can be expected to last, for a continuous period of twelve months or more; and (2) the impairments render the applicant incapable of performing the type of work that the applicant previously performed, and incapable of performing any other substantially gainful employment within the national economy.  42 U.S.C. § 423(d)(1).  "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.*  § 423(d)(3).

The ALJ employs a sequential, five-step process to determine whether an applicant is disabled under the Act.  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).  They are set out as follows:

(i)     At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled . . .

(ii)    At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . .

(iii)   At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled. . .

(iv)    At the fourth step, we consider our assessment of your residual function capacity and your past relevant work.  If you can still do your past relevant

work, we will find that you are not disabled . . .

    (v)    At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled . . . .

20 C.F.R. § 404.1520(a)(4).

    If the ALJ finds that an applicant is not disabled at any step, he may make his determination as to that condition and need not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir. 2009). At steps four and five, the ALJ determines a claimant's residual functional capacity ("RFC"), which is the most a claimant can still do considering "all relevant medical and physical evidence in [the] case record" and any "limiting effects caused by medically determinable impairments." *Garrison*, 759 F.3d at 1011 (9th Cir. 2014). If a claimant has multiple impairments, they are all included in the assessment. § 416.920(a)(2).

    At the fifth step, the ALJ may "call upon a [VE] to testify as to: (1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy.'" *Id.* (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

## DISCUSSION

## IV. Analysis

    In his motion for summary judgment, Plaintiff challenges the ALJ's determination at step four, arguing that the ALJ erred by improperly discounting and evaluating the

opinion of Plaintiff's treating physician, Paul Simon, M.D. ("Dr. Simon"). *See* ECF No. 14-1 at 4. After summarizing Dr. Simon's opinion, the ALJ proceeded to give it little weight. AR 52. Specifically, the ALJ found that Dr. Simon's opinion was: (1) inconsistent with the record; (2) inconsistent with the state agency medical consultants; (3) inconsistent with the consultative examiners; (4) inconsistent with the activities of daily living; and (5) inconsistent with Plaintiff's work activity. AR 52. Plaintiff argues that none of these reasons are legally sufficient to form the basis of the ALJ's rejection of Dr. Simon's testimony. In addition, Plaintiff proffers that the ALJ failed to consider the required factors under 20 C.F.R. § 404.1527(c)(2)-(6) before determining how much weight to assign to a treating physician's opinion. ECF No. 14-1 at 12.

### d. The Magistrate Judge's Report and Recommendation ("R&R")

On the first issue, the Magistrate Judge concluded that inconsistency of a treating physician's opinion and medical evidence in the record can be a specific, legitimate reason to discount the treating physician's opinion. ECF No. 18 at 11. The Magistrate Judge found that the ALJ adequately supported some portions of her rejection of Dr. Simon's opinions regarding the RFC about the extent of pain interference on Plaintiff's daily life. However, the ALJ incorrectly disregarded other substantial medical treatment records with respect to Plaintiff's edema and heart failure and erroneously failed to identify specific inconsistencies between Dr. Simon's treatment notes and the record. As such, the Magistrate Judge found that inconsistency with the record was a legally insufficient reason to discount Dr. Simon's opinion to the extent that the ALJ did.

On the second issue, the Magistrate Judge concluded that the ALJ erred in discounting Dr. Simon's opinion on the basis that it was inconsistent with the opinions of non-examining state agency medical consultants. Specifically, the Magistrate Judge

3:18-cv-01848-GPC-BLM

found that inconsistencies or conflicts between the treating physician's opinion and the non-examining state medical consultants' opinions were not a legally sufficient reason for the ALJ to discount Dr. Simon's opinion.

On the third issue, the Magistrate Judge found that the ALJ properly relied on the contradictory opinions of the commissioner's examining physicians as specific, legitimate reasons supported by substantial evidence to discount Dr. Simon's opinion. The ALJ pointed to the findings of Dr. William Curran and Dr. Ted Shore, which suggested that Plaintiff appeared able to perform hand manipulations and found no limitations on Plaintiff's psychological ability to participate in work-related activities. ECF No. 18 at 17, 18.

On the fourth issue, the Magistrate Judge found that inconsistencies between Dr. Simon's opinion and plaintiff's daily activities constituted a specific and legally sufficient reason to discount the treating physician's opinion. Moreover, the Magistrate Judge concluded that the ALJ developed this record with specific detail as required, demonstrating how the daily activities are inconsistent with the physician's opinion.

On the fifth issue, the Magistrate Judge found that the ALJ did not err by concluding that Plaintiff's ongoing work activities conflicted with Dr. Simon's RFC opinion. Specifically, the Magistrate Judge determined that the ALJ's analysis of the record on Plaintiff's work activity and testimony was sufficiently detailed to demonstrate specific inconsistencies between Plaintiff's sustained work activities and Dr. Simon's restrictions. As such, the Magistrate Judge concluded that this inconsistency was a legally sufficient reason for discounting Dr. Simon's opinion.

Lastly, the Magistrate Judge found that the ALJ failed to consider all of the required factors before determining how much weight to assign to a treating physician's

3:18-cv-01848-GPC-BLM

opinion: examining the relationship, length and nature of treatment relationship, supportability, consistency, specialization, and a catch-all category of other factors brought to the ALJ's attention. Failure to consider all of the required factors necessary under 20 C.F.R. § 404.1527(c)(2)-(6) in order to adequately weigh the treating physician's non-controlling opinion constitutes a reversible error.

The Court will address each of these arguments in turn. Given the absence of any objections, this Court accepts the Magistrate Judge's findings of fact and concludes that the applicable law supports the Magistrate Judge's decision. *See Campbell*, 501 F.2d at 206.

### III. Treating Physician Rule

In social security disability cases, the ALJ must consider all medical opinion evidence. *See* C.F.R. § 404.1527(b), (c). Generally, the opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician. *Russell v. Berryhill*, 2017 WL 4472630 at *4 (N.D. Cal. Oct. 6, 2017).

A treating physician's opinion is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." *Trevino v. Berryhill*, 871 f.3d 664, 675 (9th Cir. 2017) (alterations omitted). If the ALJ gives a treating physician's opinion less than controlling weight, the ALJ must comply with two requirements. First, the ALJ must consider all of the following factors in deciding the weight to give any medical opinion: (1) length and frequency of the examining relationship; (2) nature and extent of the treatment relationship; (3) supportability and whether the medical opinion includes supporting explanations and

14

relevant evidence such as laboratory findings; (4) consistency with the record as a whole; (5) physician specialization and; (6) other factors. *Id.* The failure to consider these factors constitutes reversible error. *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

In discounting a treating doctor's opinion, the ALJ must determine the appropriate weight to give it after at least some consideration of all the following factors listed above. *See* 20 C.F.R. § 404.1527(c)(2)-(6). Although ALJs need not engage in a full-blown written analysis of all of these regulatory factors, they must show "some indication" that they considered each one. *Hoffman v. Berryhill*, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017), *adopted*, 2017 WL 4844545 (Sept. 14, 2017). And when a treating doctor's opinion is contradicted by another doctor, as here, the ALJ may only discount the treating physician's opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675. Even when substantial evidence in the record contradicts the treating physician, that does not necessarily mean that the opinion should be rejected, since "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *See Orn v. Astrue*, 495 F.3d 625, 632-33.

### 1. Inconsistency With the Record

The ALJ's first discounts Dr. Simon's opinion on the basis that it is inconsistent with the record. AR 52. Inconsistency between a treating physician's opinion and medical evidence in the record can be a specific, legitimate reason to discount the treating physician's opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.");

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between [the treating physician's q]uestionnaire responses and her medical records provides an additional specific and legitimate reason for rejecting [the treating physician's] opinion of [the claimant's] limitations.").

But to discredit a treating physician's opinion as a result of inconsistency with the medical record, the ALJ must identify the specific notes establishing the inconsistency and set forth particularized reasons why her interpretations are more correct than the treating doctor's. *See Stewart v. Colvin*, 575 F. App'x 775, 777 (9th Cir. 2014). In doing so, the ALJ cannot selectively isolate and cherry-pick notes but must consider the whole record. *See Martinez v. Berryhill*, 721 F.App'x 597, 599 (9th Cir. 2017) (finding that the ALJ improperly isolated two treatment notes rather than considering the treatment records as a whole); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding that the ALJ cannot cherry-pick portions of the record to support a conflict with the treating physician's opinion).

Here, the ALJ found that some of Plaintiff's clinical examinations with VA medical providers and consultative examiners demonstrated that Plaintiff had exhibited full strength in spite of Dr. Simon's opinion. In addition, the ALJ points to appointment records that show Plaintiff had intact reflexes, no cervical compression, full range of motion, no acute distress, and no discomfort when walking with a normal gait. The ALJ cites other records indicating that Plaintiff has experienced at least some periods of good stability, good coordination, normal muscle strength and tone, no joint swelling, no edema, and no pain. According to the ALJ, these incidents and inconsistencies justify rejecting some portions of Dr. Simon's opinions regarding Plaintiff's RFC that Plaintiff's symptoms were so severe as to constantly interfere with even simple tasks. *See* AR 50,

52-53. It follows that these specific inconsistences are sufficient to support discounting some portions of Dr. Simon's opinion with respect to Plaintiff's pain.

However, the Court agrees with the Magistrate Judge that the ALJ erroneously disregarded additional substantial medical treatment records that relate to Plaintiff's other conditions. In her decision, the ALJ focuses exclusively on inconsistencies related to Plaintiff's gait, pain, and ability to grip and perform hand manipulations. AR 46, 51. But the ALJ disregards Plaintiff's extensive history of heart failure and edema in the medical record. *See* AR 50, 51; *see also supra*, section V.A.1. (evidencing the progression of Plaintiff's heart condition, at least ten incidents where Dr. Simon reported Plaintiff's lower extremity edema, an emergency room visit because of edema, restrictions on certain behaviors that would impair leg circulation, and extensive medication treatment). In its review of the decision, the Court finds that the ALJ selectively cites only a single incidence of the absence of edema. This does not fairly represent Plaintiff's treatment record for this condition. Rather, Plaintiff's history of edema and heart problems are documented consistently in the record.

As a result, the Court finds that the ALJ has not identified specific inconsistencies with the record to support her rejection of Dr. Simon's opinion that Plaintiff's edema condition and heart failure limited his ability to perform work activities. Accordingly, the ALJ's selective citation of normal clinical findings in light of substantial evidence to the contrary is unavailing as a legally sufficient reason to discount a treating physician's opinion.

### 2. Inconsistency With the Opinions of State Agency Medical Consultants

Next, the ALJ discounted Dr. Simon's opinion on the basis that it was inconsistent

3:18-cv-01848-GPC-BLM

with the opinions of state agency medical consultants.  AR 52.  In doing so, the ALJ gave partial weight to the opinions of the non-examining state medical consultants E. Cooper and S. Lee.  At the initial level, Dr. Lee opined that Plaintiff did not have a severe physical impairment.  AR 177.  Upon reconsideration, the state agency medical consultant E. Cooper opined that Plaintiff did have a severe physical impairment but with fewer limitations than those prescribed by Dr. Simon.  AR 206-07.  Neither Dr. Cooper or Dr. Lee physically examined the Plaintiff and both reviewed his condition only through available portions of the record.  *See* AR 177, 206-07.

The law requires that "the opinion of a treating or examining physician generally receive more weight than the opinion of a non-examining physician (such as the state agency physicians [. . . ])."  *Kinder v. Berryhill*, 247 F. Supp. 3d 1112, 1116 (C.D. Cal 2017).  Contradictory findings from non-examining physicians alone cannot constitute substantial evidence for discounting a treating physician's opinion.  *See Widmark v. Barnhart*, 454 F.3d 1063, 1066 n. 2 (9th Cir. 2006) (finding that the conclusory medical opinion of a non-examining state physician was sufficient to establish a conflict but could not suffice as substantial evidence to reject the conflicting medical opinion outright); *see Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990) ("The nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician.")

Here, the Court similarly finds that the ALJ cannot use the opinions of the non-examining state medical consultants to reject Dr. Simon's opinion.  To discount a treating physician's opinion, the ALJ must provide specific and legitimate reasons supported by substantial evidence.  The contrary opinions of non-examining physicians' opinions do

18

not constitute substantial and legally sufficient evidence to dismiss Dr. Simon's opinion.

### 3. Inconsistency With the Opinions of "Consultative Examiners"

The ALJ also gave Dr. Simon's opinion little weight because it was inconsistent with the opinions of two consultative examiners. AR 52. An examining physician's contradictory opinion can suffice as substantial evidence if it relies on "independent clinical findings that differ from the findings of the treating physician.'" *Orn*, 495 F.3d at 632 (citation omitted). These "independent clinical findings" can be "either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citation omitted).

At the request of the state agency, Plaintiff met with Dr. William P. Curran for an orthopedic physical examination on December 10, 2014. AR 522-528. Though Dr. Curran found palpable tenderness of Plaintiff's cervical spine, he noted a full range of motion throughout Plaintiff's body, as well as normal muscle and grip strength, sensation, and reflexes. AR 525-27. As such, the ALJ concluded that Plaintiff had no limitations. In addition, Plaintiff met with Dr. Shore, who conducted a complete psychological examination at the agency's request. AR 53, 519. Based on his examination, Dr. Shore found no limitations on Plaintiff's ability to participate in work-related activities and concluded that he had the "intellectual and emotional capacity to function adequately in a work setting." AR 53, 519. According to the ALJ, the findings of these two consultative examiners constituted substantial evidence to discount Dr. Simon's opinion.

Here, the Court finds that Dr. Curran and Dr. Shore provided independent clinical findings that differ from Dr. Simon's opinion. Their findings relied upon on their own

independent examinations supported by substantial evidence. Accordingly, the Court concludes that the ALJ properly relied on the contradictory opinions of the commissioner's two examining physicians as specific, legitimate reasons to discount Dr. Simon's opinion. *See Allen*, 749 F.2d at 579 (finding that a non-treating physician's medical opinion constituted substantial evidence since the physician's findings rested on his own neurological examination of the claimant; *Tonapetyan*, 242 F.3d at 1149 (concluding that the opinion of an examining physician "alone constitutes substantial evidence, because it rests on his own independent examination").

### 4. Inconsistency with Plaintiff's Daily Living Activities

Next, the ALJ rejected Dr. Simon's opinion because it was inconsistent with Plaintiff's own accounting of his daily living activities. AR 52. Plaintiff argues that the ALJ's assessment of his daily activities failed to demonstrate that they were actually inconsistent with Dr. Simon's RFC opinion. ECF No. 14-1 at 10-11. In response, the agency counters that Plaintiff's daily activities were inconsistent with Dr. Simon's limitations, including his inability to walk or stand for longer than two hours, walk one block without rest, and rarely move his head in any direction. ECF No. 15-1 at 11.

Inconsistency between a treating physician's opinion and a plaintiff's daily activities can serve as a legitimate and specific reason to discount the treating physician's opinion. *Ghanim*, 763 F.3d at 1162. In order to prove the inconsistency, the ALJ must develop the record with specific detail in demonstrating how the daily activities are inconsistent with the physician's opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017); *see also Alo v. Berryhill*, 766 Fed. Appr'x 512, 514 (9th Cir. 2019) (opining that the ALJ did not err in relying upon plaintiff's daily activities, which ranged from cooking to driving, to discount the treating physician's opinion).

In this case, the ALJ has developed the record with substantial and specific detail about plaintiff's daily living activities. From the record, the ALJ noted that Plaintiff reported being able to conduct numerous daily activities, including attending to personal hygiene, performing chores, using a computer, reading, driving, managing funds, building model cars, shopping, running errands, caring for his tropical fish, riding a bicycle, using public transportation, watching television, eating meals, and attending GED courses every day from Monday through Thursday. AR 52.

The Court finds that most of these activities do not establish that Plaintiff's activities of daily living were performed at such frequency or in such a manner that they conflicted with Dr. Simon's opinion. *See Trevizo*, 871 F.3d at 676 ("absent specific details about [claimant's] childcare responsibilities, these tasks cannot constitute 'substantial evidence' inconsistent with [the treating physician's] informed opinion"). However, Plaintiff's attendance of GED courses all day on Mondays through Thursdays for over a year beginning is notably inconsistent with Dr. Simon's findings that Plaintiff could sit for only two hours in a work day and would need to stand up every thirty minutes. AR 515, 556. In addition, this activity – which inevitably involved sitting for prolonged periods of time over four consecutive days a week – was contradictory to with Dr. Simon's RFC opinion that Plaintiff could rarely turn his head in any direction or hold it in a static position. Plaintiff further testified at the administrative hearing that he went back to school when his disability began and that he hoped to earn his GED soon. AR 65.

The Court finds the ALJ did not err in concluding that Plaintiff's attendance of GED classes was inconsistent with Dr. Simon's opinion. Plaintiff's own testimony about his GED attendance even in light of the restrictions detailed by Dr. Simon reasonably

21

justify the ALJ's decision to discount Dr. Simon's testimony that Plaintiff was physically unable to sit or stand for prolonged periods of time. Accordingly, the Court concludes that Plaintiff's attendance of GED classes sufficiently constitutes a specific, clear, and legitimate reason for discounting Dr. Simon's testimony.

### 5. Inconsistency With Plaintiff's Work Activity

Lastly, the ALJ discounts Dr. Simon's opinion on the basis that it was inconsistent with the Plaintiff's work activity. AR 52. Although Plaintiff does not address this issue, Defendant agrees that Plaintiff's work activity actively contradicts Dr. Simon's opinion.

Inconsistency between a treating physician's opinion and a plaintiff's work activity has been recognized as a specific and legitimate reason to discount the treating physician's opinion. *See Towne v. Berryhill*, 717 F. App'x 705, 707 (9th Cir. 2017). In this case, the ALJ considers Plaintiff's work activity in detail as follows. *See* AR 49. Plaintiff acknowledges that since 2004, he has worked as a security guard. AR 368. Until around September of 2016, Plaintiff worked at a high-end night club downtown as a guard for four to five hours at a time. AR 66. During his July 26, 2017 hearing, Plaintiff testified that he typically still worked two to three days a week at the North Park Observatory/West Coast Tavern, also for four to five hours at a time. AR 65-66, 70. On the job, Plaintiff stated that he watched the exit doors and observed the patrons. AR 71. Plaintiff says that his job causes problems in his lower back and hands. AR 71.

When the ALJ asked Plaintiff why he was not working more hours, Plaintiff responded – "there's no more hours available and physically it's very hard for me to try to work anymore hours these days" because "my neuropathy is really bad." AR 68. The ALJ expressly noted that Plaintiff was able to perform considerable work activity after the alleged onset date and that his ability to stand, walk, and persist at these positions was

inconsistent with Plaintiff's testimony about his symptoms. AR 51.

The Court finds that the record is sufficiently detailed with respect to Plaintiff's work activity to demonstrate that there are specific and substantial inconsistencies with Dr. Simon's medical opinion. Specifically, the Court notes that Plaintiff first mentioned that no additional shifts were available in response to the ALJ's question about why Plaintiff did not work more. AR 68. Plaintiff's testimony was consistent with statements that he made to his doctors about sparse work and unemployment being the root cause of his financial difficulty – and not just his disability. *See, e.g.*, AR 450, 469. In addition, the Court finds that Plaintiff's testimony about the length and nature of his sustained work activity well after his alleged onset date contradicts Dr. Simon's sitting and standing restrictions, as well as the reported need to take unscheduled breaks.

Accordingly, the Court concludes that the ALJ did not err in concluding that Plaintiff's ongoing work activities constituted a sufficient reason for discounting the opinion of Dr. Simon.

### 6. Analysis of Treating Physician's Opinion Under Required Factors of 20 C.F.R. § 404.1527(c)(2)-(6)

Because the ALJ decided not to afford Dr. Simon's opinion controlling weight, the Court finds that the ALJ was required to analyze his opinion under the factors of section 404.1527(c)(). Although the ALJ provides three legitimate reasons for discounting Dr. Simon's opinion, she crucially fails to undertake the required antecedent analysis of the other factors under 20 C.F.R. § 404.1527 to adequately weigh Dr. Simon's opinion through the lens of deference accorded to a treating physician. She does address consistency, which is one of the factors. But there is no indication that she contemplated any of the other factors, including the duration, nature, supportability, or frequency of the

3:18-cv-01848-GPC-BLM

treatment relationship. It is also conspicuous that the ALJ's decision did not identify Dr. Simon as Plaintiff's treating physician. *See* AR 43-54. When the ALJ addresses Dr. Simon in her opinion, she references only his May 2017 RFC opinion and does not distinguish Dr. Simon's numerous medical notes through his years of treating the Plaintiff from those of other VA medical providers, or even the consultative examiners. *See* AR 50. Moreover, the ALJ never mentions Dr. Simon's – or any of the other various medical experts' – specialties in her decision.

"The failure to consider these regulatory factors alone constitutes reversible legal error." *See Trevizo v. Berryhill*, 871 F.3d at 676 (internal quotations omitted). The inconsistency of Dr. Simon's opinion with the state's medical examiners, the Plaintiff's daily living, and the Plaintiff's work activity does not obviate the need for the ALJ to assess the other relevant factors. *See, e.g., Krebs v. Berryhill*, 2018 WL 100118, at \*7-8 (S.D. Cal. Feb. 20, 2018) (finding reversible legal error where the ALJ did not consider "factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician"). Moreover, these other factors – especially the duration and frequency of the treating relationship and the specialties of the medical experts in the case – are significant in analyzing the impact of Plaintiff's heart failure, edema, and extensive documented history of pain on the Plaintiff's RFC. The significance of Plaintiff's work activities may have been viewed differently in light of Dr. Simon's extensive and years-long treating relationship with the patient. Similarly, because consultative examiner Dr. Curran was an orthopedist who did not consider Plaintiff's heart failure and edema – or the impact these conditions may have had on Plaintiff's ability to sit, stand, or walk – his contradictory opinion possessed

limited value in evaluating Dr. Simon's opinion. As such, the Court concludes that consideration of the other required factors could well have changed the appropriate weight of the evidence and outcome of the ALJ's determination.

Accordingly, the Court concludes that the ALJ committed a reversible error by assigning little weight to the treating physician's opinion without considering all of the relevant regulatory factors. The Court is unable to deem this error harmless and finds that it constitutes grounds for remand.

## IV.    Remanding for Further Proceedings

In deciding whether to remand for either further proceedings or an award of benefits, the Court is guided by the three-step "credit-as-true" rule. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-02 (9th Cir. 2014). The Court must first ask whether the ALJ failed to offer "legally sufficient reasons for rejecting evidence." *Id.* at 1100. If she failed to do so, the Court would next determine whether there are outstanding issues that must be resolved before a determinability of disability can be made and if further administrative proceedings would be useful. *Id.* at 1101. And lastly, the Court must analyze if the relevant testimony is credible as a matter of law – and award benefits, so long as the record of the whole "leaves not the slightest uncertainty as to the outcome of the proceeding." *Id.* In addition, remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. *See Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).

Here, the Court agrees with the Magistrate Judge's Recommendation that further administrative proceedings would be useful. Although the ALJ made reversible errors and relied on both proper and improper reasons to discredit Dr. Simon's opinion, the Court also finds that additional administrative proceedings could possibly remedy the

25

defects in the ALJ's decision.  As it stands, the Court cannot find that the record leaves not the slightest uncertainty as to the outcome.  Even after proper consideration of the regulatory factors, it is possible that the ALJ may still discount Dr. Simon's opinion on the basis of the surviving legally sufficient inconsistencies.  And if the ALJ chooses to afford greater weight to Dr. Simon's opinion after undergoing this analysis, the ALJ would still need to factor that weight into determining Plaintiff's disability status. Finally, if Plaintiff is found to be disabled, the ALJ will also need to determine the disability onset date.  *See Guzman v. Berryhill*, 356 F. Supp. 3d 1025, 1040 (S.D. Cal. 2018).

The Court finds that the ALJ is in the best position to undertake the proper regulatory analysis and the weight that must be accorded to Dr. Simon's opinion.  This is a potentially outcome determinative analysis that would be best conducted through further administrative proceedings.

<u>**CONCLUSION**</u>

Based on the above, the Court ADOPTS the Report and Recommendation of the Magistrate Judge and **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendant's cross-motion for summary judgment.  The case shall be remanded for further proceedings.

**IT IS SO ORDERED.**

Dated:  September 30, 2019

Hon. Gonzalo P. Curiel
United States District Judge

3:18-cv-01848-GPC-BLM